Prior to 1911, there was a county road passing through the town of Attalia, in the county of Walla Walla, going in a northerly and southerly direction. During that year, the North Coast Railway Company (predecessor of the Oregon-Washington Railroad Navigation Company) was building its branch line into the Yakima valley. Its main line between Spokane and Portland passed through the town. The railroad company made application for permission to have its branch line cross the county road at grade, at a point about a mile north of the town. The railroad commission, which then had jurisdiction of such matters, granted a temporary grade crossing, but refused to grant a permanent crossing, and reserved jurisdiction to thereafter require a separation of grades. The railroad was then constructed and, at all times since, this grade crossing has existed.
In 1922, the matter was again called to the attention of the public service commission, which ordered a hearing. Considerable testimony was taken, by which it appeared that the county road on each side led up to the crossing on a narrow and somewhat steep grade, and that the crossing was dangerous because vehicles approaching from either side could not see one another until almost on the crossing. There was considerable testimony to show that an under or over crossing was impracticable because of the expense and was unnecessary if the road be widened and the approaches to the crossing lengthened and made less steep. An adjournment was had with the view that the county and the railroad would make an agreement between themselves for making the suggested changes in the road.
The matter stood in that condition until 1924, when it was again brought to the attention of the department of public works, which ordered another hearing. At *Page 646 
that time, the state had surveyed and was constructing the Inland Empire highway, and it had adopted, as a part of its road, the portion of the old county road which we have mentioned, making the crossing at substantially the same place. When this last matter came on for hearing, it was consolidated with the original proceeding instituted before the railroad commission, wherein a temporary grade crossing was authorized in 1913. At the hearing, the railroad took two positions; one, that, to carry the highway under the railroad, was impracticable because of lack of drainage and because of the great expense, which the testimony tends to show would be between $22,000 and $32,000, and that the grade crossing could be made reasonably safe by widening the highway and making its approaches to the crossing flatter. Its other position was that, at this point, the highway could be easily changed so as to entirely avoid any crossing north of the town, and also avoid a grade crossing in the town of both the Oregon-Washington Railroad Company's and the Northern Pacific Railroad Company's tracks, substituting therefor an overhead crossing. There was considerable testimony supporting the advisability of making the local change in the highway. But the department of public works refused to consider that question, because it was of the belief that, since the matter of the location of highways was in the discretion of another department of the state, it had no power or authority in the matter. It ultimately made an order directing that an under crossing at the point involved in this proceeding, to wit, about a mile north of the town, be made, requiring the railroad company to pay all the expense thereof. The matter was reviewed by the superior court of Walla Walla county, which held that the department of public works had jurisdiction to make the local change in the highway and that it should *Page 647 
consider that matter on its merits. The court also held that the department erred in requiring the railroad company to pay all of the expense of the under crossing in question. The department has brought the matter here for review.
There was no prejudicial error in consolidating this and the original proceeding instituted in 1911. Both cases concern the same crossing. Very much the same matters are involved. The department is not hampered by any strict or fixed rules of procedure. In its original order granting a temporary grade crossing, it reserved to itself the power to subsequently require a separation of grades. Unquestionably, it would have had this power even without the reservation. Consequently, the consolidation was not improper.
The next question to be considered is whether the department had jurisdiction to make a local change in the highway with a view of avoiding the crossing. Its position is that the highway department of the state has exclusive jurisdiction as to the location of state highways. In so determining, we think it was in error. It is our view that the statute gives the department power to make such local changes in a highway as shall avoid a grade crossing. It has this power, whether the crossing be a new one or an existing one. It is true that the highway department is, by statute, given the right of locating state roads. But the statute giving that power and that giving the department of public works jurisdiction over crossings must be construed together. Section 10513, Rem. Comp. Stat., provides that, whenever any highway is to cross a railroad at grade, permission to do so must be obtained from the crossing department of public works. It provides that, if the department shall find that it is not practicable to have an over or under crossing, then it may change the highway so that an over or under *Page 648 
crossing may be obtained. The next section provides for existing crossings of any kind and authorizes the department of public works to make a change in the highway in order that an over or under crossing may be constructed. This case falls within § 10514, because the crossing involved here is an existing one, having been used for the last ten years.
While the department of public works has power to change the highway for the purpose mentioned, it may also use its discretion in that regard and, if that discretion be fairly exercised, the courts will not interfere. Our view with reference to this matter coincides with that entertained by the trial court.
The departmental order directed that there be a separation of the grade in question at the entire cost of the railroad. In our opinion, the trial court was right in holding this was error. The matter of the cost of crossings of all kinds is covered by § 10516, Rem. Comp. Stat. [P.C. § 5643], which has subdivisions (a), (b) and (c). The department found that the matter in controversy was controlled by subdivision (a), while the trial court held that subdivision (b) covered the matter. Subdivision (a) reads as follows:
"Whenever, under the provisions of this act, new railroads are constructed across existing highways, or highway changes are made either for the purpose of avoiding grade crossings on such new railroads, or for the purpose of crossing at a safer and more accessible point than otherwise available, the entire expense of crossing above or below the grade of the existing highway, or changing the route thereof, for the purposes mentioned in this subdivision, shall be paid by the railroad company."
It is plain to us that this subdivision has reference only to new crossings, and since the crossing involved here is an old one, that subdivision cannot be applicable. *Page 649 
Subdivision (b) is too long to quote here, but the substance of it is that, whenever a new highway is constructed across an existing railroad or an existing crossing is eliminated or changed, the entire expense of constructing any over crossing, under crossing or grade crossing shall be apportioned between the railroad and the state or county highway. In this case, neither the railroad nor the highway is new. The crossing has existed many years. A change is proposed to be made in the manner of an existing crossing. Under subdivision (b), the cost of this change should be apportioned by the department of public works. The trial court very clearly expresses the matter in its decision:
"In its present condition, it is a case where an existing grade crossing is eliminated or changed . . . and if it shall be finally determined that there shall be no change in the route of the highway and that the change ordered by the department of public works shall be made at the point in question, then subdivision (b) of § 10516 becomes operative, and the cost must be apportioned as provided in that subdivision, and the department of public works was in error in assessing the whole cost to the railroad."
The appellant argues one or two other matters which we do not consider of importance, but concerning which the trial court was right in its ruling. The judgment is affirmed.
TOLMAN, C.J., PARKER, HOLCOMB, and ASKREN, JJ., concur. *Page 650